## THE KING *vs.* YOUNG TANG.

APPEAL FROM THE POLICE COURT, HONOLULU.

APRIL TERM, 1887.

JUDD, C.J., McCULLY, PRESTON and BICKERTON, JJ. FORNANDER, J., absent.

The defendant was convicted in the Police Court, Honolulu, of *having opium unlawfully in his possession.*

Held, that since the passage of the Act of 1886, " *To regulate the importation and sale of opium in this Kingdom,*" the mere possession of opium is not punishable by any law in force.

Held also, that the Court will not listen to an objection to the constitutionality of an Act by a party whose rights it does not affect.

Judgment of the lower Court reversed.

OPINION OF THE COURT.

This case comes to us on an appeal on points of law from the Police Court of Honolulu. The defendant was charged with the offense of having opium unlawfully in his possession. He pleaded not guilty and the evidence on the part of the prosecution was taken and the Crown rested. The defendant then, by his attorney, Mr. J. T. Dare, moved that the defendant be discharged on the grounds—

" First. The Crown has not proven its charge of unlawful possession of opium.

4

" Second.   That the possession of opium under the law of 1886, is not a crime.

" Third.   That the Act of 1886, entitled 'An Act to Regulate the Importation and Sale of Opium in this Kingdom,' is unconstitutional and therefore void and of no effect."

The Police Justice overruled the motion, and the defendant offering no testimony in defense, the Police Justice found him guilty and sentenced him to pay a fine of one thousand dollars and to be imprisoned at hard labor for the term of two years.

Whereupon the defendant gave notice of and thereafter perfected an appeal to the Supreme Court in Banco, upon the above points of law made on his motion to be discharged.

This being an appeal solely upon points of law, the Court has not only to determine whether the appellant is liable to any punishment under the statute of last session, but whether there is any other law in force which subjects the appellant to punishment, because if we should so find, we must remit the case to the Police Magistrate in order that a legal sentence may be passed.

We must therefore ascertain how far the said statute conflicts with the law as it stood when such statute came into operation.

For this purpose it will not be necessary to go back further than the Law of 1874.

The title of this Act as amended by the Legislature of 1876 is " An Act to Restrict the Importation and Sale of Opium or preparation thereof."

This Act was amended in several particulars, immaterial to be considered in this case, except an Act being Chapter XXV. of the Laws of 1880, which will hereafter be more particularly referred to.

The Act of 1874 is as follows:

Section 1.   The importation of opium or any preparation thereof into this Kingdom, except as authorized by Section 2 of this Act, is hereby strictly prohibited; and whosoever shall import, sell, give or furnish opium or any preparation thereof to any person in this Kingdom, except as provided in said Section

2, shall be liable to a penalty of not less than one hundred dollars, and to be imprisoned at hard labor for any term not exceeding two years, one-half of which pecuniary penalty shall be paid to the party giving the information which shall lead to the conviction of the offender.

Section 2. The Board of Health may from time to time import such quantities of opium or preparations thereof, as the said Board shall deem necessary for medical purposes in this Kingdom, and shall furnish it at cost to any physician or surgeon having a diploma or certificate from some medical college or university, and who has a license to practice medicine in this Kingdom, also to the person in charge of the medicines at the Leper Settlement at Molokai, to be used exclusively for medical purposes. And the said Board may also furnish it to the captain or surgeon of any vessel bound to a foreign port for use on board said vessel.

Section 3. Any person who shall have in his possession opium or any preparation thereof, which he shall not have received from the Board of Health, or from a duly licensed physician or surgeon, as prescribed in Section 2 of this Act, shall forfeit such opium or preparation thereof to the Hawaiian Government, and the same shall be seized and delivered to the Board of Health, and such person shall be imprisoned for a term of not more than one year, with or without hard labor, in the discretion of the Court.·

(By Chapter XVIII. of the Session Laws of 1880, the punishment was increased to a penalty of not less than $50 nor more than $250 and imprisonment not exceeding one year).

Section 4. Any physician or surgeon who shall sell, prescribe, or furnish opium, or any preparation thereof, to any person in the habit of smoking or otherwise using the same, or to any other person, except as a remedy in case of sickness, shall forfeit to the Hawaiian Government all opium or preparations thereof which may be in his possession, and it shall be seized and delivered to the Board of Health, and he shall be fined in the sum of not less than twenty-five nor more than one hundred

dollars, and if he shall violate this Act more than once, he shall not again be furnished with opium by the Board of Health.

Section 5. Nothing in this Act shall be construed to exempt any person or vessel from the pains and penalties prescribed by the laws of the Kingdom against smuggling.

At the session of the Legislature held in 1880, the following law was passed :

"An Act to Authorize the Minister of the Interior to Grant Licenses for the Sale of Poisonous Drugs.

"Section 1. The Minister of the Interior may grant a license to any duly qualified physician or surgeon, or to any other suitable person, who may be recommended by the Board of Health, to import and sell poisonous drugs for the term of one year, in the District of Honolulu, upon receiving the sum of forty dollars, and in any other district the sum of twenty dollars.

"Section 2. No such license shall authorize the licensee to import, sell or furnish opium or any preparation thereof, except on the prescription of a duly qualified physician.

"Section 3. The Board of Health, by its president, may authorize any duly qualified physician or surgeon, or any licensees under this Act, to enter opium and preparations thereof at the Custom House on the payment of the duties thereon, anything in the Act approved on the 8th of August, 1874, entitled 'An Act to Restrict the Importation and Sale of Opium and Preparations thereof,' to the contrary notwithstanding.

"Section 4. Any person who shall import, sell or furnish any poisonous drug without license, or contrary to the provisions of this Act, shall be fined not less than fifty nor more than five hundred dollars, or to be imprisoned at hard labor, not exceeding six months, in the discretion of the Court. Nothing in this Act contained shall be construed to prevent the Government or the Board of Health from importing any drugs or medicines.

＊          ＊          ＊          ＊          ＊

"Section 6. The provisions of Chapter LXXXVIII. of the Penal Code shall apply to all persons holding licenses under this Act."

Chapter LXXXVIII. of the Penal Code, referred to in the last mentioned Act, regulates the sale of deadly poisons, and prescribes the manner in which records shall be kept by persons selling the same; and Section 4 enacts that "Every licensed physician, druggist or apothecary who shall compound, sell or deliver any prescription containing any poisonous drug or substance deleterious to human life, to be used as medicine, shall enter upon his books said prescription written out in full with the date thereof, with his own name appended thereto, or the name of the physician who prescribed the same, and the person to whom the same was delivered; and no such prescription shall be compounded, sold or delivered unless the name of the person compounding, selling or delivering the same, or the name of the physician prescribing the same, be appended to the prescription in full, and every such prescription shall be preserved; and said books and prescriptions shall be subject at all times to the Minister of the Interior or his agent."

5. Any person violating the provisions of this chapter shall forfeit a sum not exceeding one thousand dollars for each offense.

In the session of 1880 another Act was passed relating to Chinese physicians who were thereby allowed to receive licenses to practice medicine "subject to the same laws and restrictions as other licensed physicians."

It would seem that the effect of the law, Chapter XXV. of 1880, was to remove some of the restrictions of the law of 1874, and allowed licenses to be issued to persons outside the physicians mentioned in that law, to sell poisonous drugs, and sell and furnish opium or its preparations to persons having prescriptions from any duly qualified physician.

And it would also seem that all persons dealing in poisonous drugs, of which there can be no doubt opium is one, were compelled to keep records of sales, etc.

And that no physician or surgeon could sell or prescribe or furnish opium or preparations to any person "in the habit of smoking or otherwise using the same."

And also that in consideration of the license-fee, the persons licensed could send for opium themselves, and the Board of Health were relieved from the necessity of importing it.

We now come to the law of 1886, entitled "An Act to Regulate the Importation and Sale of Opium in this Kingdom."

This Act repeals all laws and parts of laws inconsistent with it.

Its provisions are as follows:

Section 1. The Minister of the Interior is hereby authorized, with the consent of His Majesty the King in Cabinet Council, to grant to some one applying therefor a license to import and sell opium, or any preparation of opium, in this Kingdom, upon the said Minister of the Interior receiving for such license the sum of thirty thousand dollars for each year.

Section 2. Before the license provided for in this Act is issued, the person or persons who have obtained the same shall make and execute and deliver to the Minister a good and sufficient bond in the sum of ten thousand dollars, with not less than one good surety to be approved by the said Minister, conditioned that the party or parties who have obtained the license will not sell, give or furnish any opium, or preparation of opium, to any native Hawaiian or Japanese, or to any other person who has not received a certificate from some physician stating that opium is the proper remedy for the disease from which the bearer is suffering, and that the rules and regulations contained in the license will not be violated.

Section 3. The person receiving such license shall keep in a book of record, to be furnished him by the Minister of the Interior, a record of the names of all persons to whom such licensee has sold any opium, with the date of such sale and the quantity sold, and the name of the physician issuing the certificate on which sale is made, and the date of such certificate. Such record book shall be kept in the English and Hawaiian languages, and shall be open to inspection at any time to any member of the police force and the Minister of the Interior. The person holding the license shall give to each person pur-

chasing opium a receipt, stating the date of such purchase and the quantity of opium sold.

Section 4.   Every person not having a license who shall have possession of any opium contrary to the provisions of Section 3 of this Act, or who shall sell or furnish any opium, or preparation of opium, to any person or persons contrary to law shall, upon conviction thereof, be fined in a sum not less than one thousand dollars nor more than five thousand dollars, and be imprisoned at hard labor for any term not more than ten years nor less than two years.

Section 5.   The person who has obtained a license under this Act is hereby authorized to import opium, or preparation of opium, through the Custom House, paying a duty upon the same of fifteen per cent. *ad valorem*, and there shall be charged on each container of opium at the rate of one dollar for each half-pound of opium imported, for a stamp to be put on each tin of opium imported.   All opium seized which has been brought into this Kingdom without paying duty, and all opium which has not been stamped, shall be forfeited to the Government, and shall be stamped with the Government stamp.   The Government may dispose of such opium to the party who has received the license upon his paying the duty upon the same of fifteen per cent. *ad valorem*, and one dollar per tin for the stamp.

Section 6.   The person who has obtained a license, who shall violate any of the provisions of this Act, shall have his license cancelled, and the penalty of the bond provided for in this Act enforced, and be imprisoned at hard labor for a term not more than ten years nor less than two years, and pay a fine of not more than five thousand dollars, nor less than one thousand dollars.

Section 7.   In addition to the license prescribed by Section 2 of this Act, it shall be incumbent upon any person or persons desiring to purchase or use opium, or any preparation thereof, that they obtain a license from the Marshal or his deputy as hereinafter provided, authorizing the intending purchaser to use opium or any preparation thereof.

Section 8. The Minister of the Interior shall have authority to make rules and regulations for the proper regulation of the sale of opium or its preparations under this Act, and such rules and regulations, after being duly published, shall have the force and effect of law, and upon any violation thereof the party or parties so violating the same shall be subject to the penalties provided in Section 6 of this Act for four years, which shall be the length of time for which such license shall be granted, and it shall be so stated in the license.

Section 9. Jurisdiction is hereby conferred upon Police and District Magistrates to hear and determine all cases which may arise under this Act.

Section 10. One-half of the money penalties provided for by this Act shall be paid to the party who gave the information which led to the conviction of the offender fined.

Section 11. All laws and parts of laws in conflict with the provisions of this Act shall be and the same are hereby repealed : Provided, however, that should no license be issued under the provisions of this Act, that then and in such case this Act shall not be deemed to, nor shall it repeal Chapter LVI. of the Laws of 1874, as amended by Chapter LXIII. of the Laws of 1876, and Chapter XVIII. of the Laws of 1880.

It would seem that the effect of this Act is to remove many of the restrictions relating to the importation and sale of opium and its preparations existing at the time the law was enacted.

One other person, in addition to those persons authorized under the then existing law, was authorized, on obtaining a license, to import and sell opium and its preparations for the term of four years upon paying the license fee mentioned in the Act.

And although it may be urged that "where an Act of Parliament gives authority to 'one' person expressly, all others are excluded," the principle is carried out by holding that the authority to import and sell opium, etc., under this Act is exclusive to the one licensee, and this construction will not be in conflict with the preceding laws on the subject; that in fact

this statute merely enables one other person to deal in this poisonous drug.

And this view is further confirmed by Section 2, which provides for a bond conditioned that the licensee will not sell, etc., to * * * any person who has not received a certificate, (which may mean prescription), from some physician stating " that opium is the proper remedy for the disease from which the bearer is suffering."

There being no express enactment avoiding Section 4 of the Act of 1874, there is nothing in this Act in conflict with that section, and it therefore follows that physicians and persons licensed under the law of 1880 are controlled by that section, and may not prescribe to persons in the habit of smoking or using opium, etc.

As further illustrating this view we will consider Section 3 and compare it with Chapter LXXXVIII. of the Penal Code.

This section provides that the licensee shall keep a record of sales, etc., in which he is to enter the names of all persons to whom he has sold opium, the date and quantity, the name of the physician issuing the certificate (prescription) and its date, and the licensee is to give the purchaser a receipt, etc.

This record is to be kept by the licensee under this Act instead of the one prescribed in the said chapter, the provisions of which are (in this respect only) in conflict with this law.

Section 4 prescribes a punishment of a fine of not less than one thousand nor more than five thousand dollars and imprisonment at hard labor for not more than ten years nor less than two years, upon any person not having a license or who shall sell or furnish opium, etc., to any person or persons contrary to law, and it therefore follows that this penalty may be inflicted upon any person licensed or authorized to sell or furnish opium, whether under this law or any of those previously mentioned, who shall not comply in all respects with, or sell contrary to, the terms of those laws.

Section 4 of the Act in question prescribes the same penalty for any person who shall have possession of any opium contrary

to the provisions of Section 3, but as that section does not impose any duty upon the purchaser, the decision arrived at in the case of *Manuel Brito, ante,* page 42, must be followed, and it must be declared that no punishment for the mere possession of opium can be inflicted under that section.

We have now to consider whether having opium in possession is an offense under the Law of 1874 as amended by the Act No. 18 of 1880.

This is the only law which makes the possession of opium an offense, and the possession necessary for a conviction must be contrary to the terms of Section 3 of that Act, hereinbefore set out.

Now does the Act of 1886 conflict with this section?

In construing this Act, we must take into consideration the intention of the Legislature so far as such intention can be gathered from the text of the Act itself, and must give effect to the Act if possible.

The Legislature has attempted to deal with, and prescribe a punishment for, persons having opium in their possession, but as we have already stated, has not done so effectively. It may be the effect of previous legislation was not in the minds of the legislative body, but we cannot assume this. On the contrary we must assume that they were conversant with the whole law upon which they were legislating, and it appears to us that they intended to remove some of the restrictions affecting the dealing with the drug in question, and to that extent the law would seem to be effectual, for it undoubtedly enables persons prohibited by former laws, to sell this drug.

By attempting to prescribe a penalty for having possession of opium, under certain circumstances, the Legislature has shown its intention to deal with the subject, and it has failed in its attempt.

We can only give effect to such intention, by adding after "Section 2 of this Act," in Section 3 of the Law of 1874, the words "from a person duly licensed as aforesaid" or some similar words, but which would materially alter the offense

described, and would in fact be legislating instead of construing.

The part of the Act of 1874, dealing with the matter of the possession of opium, is in conflict with that part of the Act of 1886 which refers to the same subject, and is to this extent repealed, as Section 11 of the Act of 1886 enacts that all laws and parts of laws, in conflict with the provisions of this Act, shall be and the same are hereby repealed.

Under these circumstances we have, and we do so with much regret, to say that the mere possession of opium is not an offense punishable by any law now in force.

However, whether a person having opium in possession could not properly be charged and convicted of smuggling the same, is another question, and one that the Court will have to consider when it is raised.

The First point made on this appeal is that "the Crown has not proved its charge of unlawful possession of opium."

On the authority of *Briggs vs. Briggs*, 4 Hawn., 448, we hold that whether there is any evidence to sustain the judgment, is a question of law, but the Court in such case will examine the evidence only so far as to ascertain whether or not there is evidence to sustain the judgment. We are not to consider the question whether the charge of unlawful possession of opium was fully proven, as the appeal is limited to the points of law taken. Finding, from the papers sent up, evidence that the defendant had possession of opium, we enquire no further and overrule this point.

The Second point has already been considered fully.

The Third point, that the Act of 1886 entitled "An Act to Regulate the Importation and Sale of Opium" is unconstitutional, and therefore void and of no effect, remains to be considered.

The 77th Article of the Constitution is cited as being contravened by this law. It reads: "To avoid improper influences which may result from intermixing in one and the same Act such things as have no proper relation to each other, every law shall embrace but one object, and that shall be expressed in its title."

It is contended by the defendant's counsel that as the title of the Act in question is "An Act to Regulate the Importation and Sale of Opium," and the Act itself legislates upon not only the importation and sale of opium, but of "preparations of opium," the Act embraces more than one object, and also that the subject of preparations of opium is not expressed in the title, and therefore the Act is unconstitutional and void.

It becomes necessary to enlarge somewhat upon the duty of the Court where questions involving the constitutionality of a law are presented.

Judge Cooley says, on page 159 of his work on Constitutional Limitations, "It must be evident to any one that the power to declare a legislative enactment void is one which the Judge, conscious of the fallibility of the human judgment, will shrink from exercising in any case where he can conscientiously and with due regard to duty and official oath decline the responsibility.

The Legislative and Judicial are co-ordinate departments of the Government of equal dignity; each is alike supreme in the exercise of its proper functions, and cannot directly or indirectly, while acting within the limits of its authority, be subjected to the control or supervision of the other, without an unwarrantable assumption by that other of the power which, by the Constitution, is not conferred upon it. The Constitution apportions the powers of government, but it does not make any one of the three departments subordinate to another, when exercising the trust committed to it. The Courts may declare legislative enactments unconstitutional and void in some cases, but not because the judicial power is superior in degree or dignity to the legislative. Being required to declare what the law is in the cases which come before them, they must enforce the Constitution as the paramount law, whenever a legislative enactment comes in conflict with it.

But the Courts sit, not to review or revise the legislative action, but to enforce the legislative will; and it is only when they find that the Legislature has failed to keep within its con-

stitutional limits, that they are at liberty to disregard its action."

The power to declare a law unconstitutional is expressly given to the Supreme Court by Section 824 of the Civil Code.

Article 78 of the Constitution prescribes that all laws heretofore enacted or that may hereafter be enacted, which are contrary to this Constitution, shall be null and void.

Article 69 of the Constitution prescribes that the decisions of the Supreme Court, when made by a majority of the Justices thereof, shall be final and conclusive upon all parties.

But, considering the solemn and responsible nature of the function thus devolved upon the Supreme Court, we adopt the principle which prevails in other Courts, that the Court will not pass upon a constitutional question and declare a statute to be invalid, unless a decision upon that very point becomes necessary to the determination of the cause.

"In any case, where a constitutional question is raised, though it may be legitimately presented by the record, yet if the record also presents some other and clear ground upon which the Court may rest its judgment, and thereby render the constitutional question immaterial to the case, the Court will take that course, and leave the question of constitutional power to be passed upon when a case arises which cannot be otherwise disposed of, and which consequently renders a decision upon such question necessary." Cooley, Const. Lim., p. 163; *Frees vs. Ford*, 6 N. Y., 177; *White vs. Scott*, 4 Barb., 56.

The Court having, on the second point of the appeal, found that the defendant in this case cannot be punished by any law now in force for the offense of which he is charged: to wit, the possession of opium, the question whether this law is in conflict with the Constitution becomes immaterial.

And it is not proper for us to listen to an objection to the constitutionality of an Act by a party whose rights it does not affect. See Cooley, p. 163.

The defendant is charged with a specific offense under a law which we have held inoperative against him. He cannot, upon

this appeal, raise the unconstitutionality of the law in favor of persons not before this Court.

To illustrate it further. The Court would only be authorized to consider the unconstitutionality of the Act of 1886, on the ground of its title not including "preparations of opium", when the objection is made by one who is charged with the offense of having unlawful possession of "preparations of opium."

This principle was adopted by this Court in the case of *The King vs. Yat Sing*, 3 Hawn., 672, and we follow it.

Whenever a person charged with importing or selling opium contrary to the Act, or for violating the regulations said to have been made thereunder, or for importing or selling preparations of opium, shall raise the question of the constitutionality of the Act, and the decision of this question is necessary, as being the very *lis mota*, this Court will consider it, and will not be at liberty to decline so to do.

The result is, that the judgment of the Lower Court must be reversed, and the defendant discharged.

*F. M. Hatch* and *P. Neumann*, for the Crown.

*J. T. Dare*, for defendant.

