The City of New York, Respondent, v. Manhattan Railway Company, Appellant.

1. Elevated Railroads — Construction of Statutory Requirement That Percentage of "Net Income" Be Paid to City by Certain Railway — Meaning of Words "Net Income." In construing the provisions of the statute (L. 1867, ch. 489, § 9) which required the street railway company to whose rights, franchises and interests in Ninth avenue in the city of New York the Manhattan Railway Company has succeeded and to whose obligations under such statute it is subject, to pay five per cent of the "net income of said railway from passenger traffic upon Manhattan Island into the treasury of the city of New York in such manner as the legislature may direct," and the provisions of the statute (L. 1868, ch. 585) directing the manner in which such five per cent of the "net income" should be paid, the words "net income" mean the gross receipts from passenger traffic less the general expenses of operating the road, such as station, train and maintenance expenses, but without any deduction for taxes, rental damages and interest on indebtedness.

2. Same — Neither Rental Damages Nor Interest Should Be Deducted from Gross Receipts in Computing "Net Income." Rental damages cannot enter into the computation of such net income for the reason that section 11 of the act of 1867 imposed them upon the company as a burden additional to the compensation to be paid to the city, as provided by section 9; but, independent of that, they represent the compensation which abutting owners are entitled to be paid for any trespass upon their easements in the streets and their payment is a general charge upon the corporation. Nor is interest on moneys borrowed for expenditure in acquiring and constructing the railway anything but a debt of the corporation which is to be discharged out of net earnings.

3. Same — Taxes Not Deductible in Computing "Net Income." Annual taxes must be excluded in the computation of net income, since the Legislature could not have contemplated their payment in preference to the compensation provided for the city, the statutory provision (§§ 2 and 3 of the act of 1868) being expressive of a purpose to make such compensation as substantial as possible by priority of lien.

*City of New York* v. *Manhattan Ry. Co.*, 119 App. Div. 240, affirmed.

(Argued April 6, 1908; decided April 21, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered

July 30, 1907, affirming a judgment in favor of plaintiff entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Julien T. Davies* and *Brainard Tolles* for appellant.   In ascertaining the net income from passenger traffic the appellant was entitled to the deduction of the amounts specifically found by the learned referee to have been actually paid or incurred as taxes upon the instrumentalities employed in conducting the traffic.   (*Gibb* v. *P. Nat. Bank*, 198 Ill. 307 ; *U. P. R. R. Co.* v. *United States*, 99 U. S. 402; *N. Y. L. Ins. & Trust Co.* v. *Sands*, 24 Misc. Rep. 102 ; *Matter of Young*, 15 App. Div. 285 ; *Bispham's Estate*, 24 Wkly. Notes [Pa.], 79 ; *Hemphill's Estate*, 180 Penn. St. 95 ; *Earl* v. *Rowe*, 35 Me. 414 ; *Groton* v. *Boxborough*, 6 Mass. 49 ; *Freeport* v. *Sidney*, 21 Me. 305 ; *Matter of Cooley*, 186 N. Y. 220.) In ascertaining the net income from passenger traffic the appellant was entitled to the deduction of the amounts found by the learned referee to have been paid for damages which were unavoidable incidents of the operation of the railway employed in conducting such traffic.   (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10 ; *Smith* v. *Eastern R. R. Co.*, 124 Mass. 154 ; *People ex rel. Manhattan R. Co.* v. *Barker*, 165 N. Y. 305 ; *Comm.* v. *P. & E. R. Co.*, 164 Penn. St. 252.)   In ascertaining the net income from passenger traffic the appellant was entitled to the deduction of the amounts shown by the evidence to have been paid out of income as interest upon moneys expended in acquiring or constructing the railway and its appurtenances used in conducting such traffic.   (*People ex rel. Cornell* v. *Davenport*, 30 Hun, 177; *Thorn* v. *de Breteuil*, 86 App. Div. 405 ; *N. H. R. R. Co.* v. *I. C. Comm.*, 200 U. S. 361 ; *Groton* v. *Boxborough*, 6 Mass. 49 ; *Atty.-General* v. *London County Council*, L. R. [2 K. B. 1895] 375 ; *M. & O. R. R. Co.* v. *Tennessee*, 153 U. S. 486 ; *St. John* v. *E. R. Co.*, 10 Blatchf. 271 ; 89 U. S. 136 ; *U. P. R. R. Co.* v. *United States*, 99 U. S. 402.)

*Francis K. Pendleton, Corporation Counsel (Theodore Connoly* of counsel), for respondent.   Net income from passenger traffic upon which the statutory percentage is payable is what is left of the passenger receipts after deducting therefrom the cost of earning them, usually called "operating expenses." (*Wilds* v. *S. L., A. & T. H. R. R. Co.*, 102 N. Y. 410; *N. Y., etc., R. Co.* v. *Nickals*, 119 U. S. 296; *M. & O. R. R. Co.* v. *Tennessee*, 153 U. S. 486; *Phillips* v. *Eastern Railroad*, 138 Mass. 122; *St. John* v. *E. R. Co.*, 10 Blatchf. 217; 22 Wall. 136; *Fosdick* v. *Schall*, 99 U. S. 235; *Mayor, etc.,* v. *B. R. R. Co.*; 97 N. Y. 282; *Mayor* v. *D. D., etc., R. R. Co.*, 112 N. Y. 137; *Mayor, etc.,* v. *T. S. Ry. Co.*, 113 N. Y. 311; *Bennett* v. *Austin*, 81 N. Y. 308.) Neither interest upon bonds used for the acquisition of other property, for construction and equipment account, for the payment of land damages and similar purposes, nor taxes nor land rental damages can be charged to expenses of operating the portion of road affected by the act. (*C. R. W. Co.* v. *City of Cedar Rapids*, 118 Iowa, 234; *Story* v. *N. Y. El. R. Co.*, 90 N. Y. 121; *Lahr* v. *Met. R. Co.*, 104 N. Y. 268; *Kane* v. *N. Y. El. R. Co.*, 125 N. Y. 164; *Kernochan* v. *N. Y. El. R. Co.*, 128 N. Y. 559; *Sperb* v. *Met. R. Co.*, 137 N. Y. 155; *Hindley* v. *M. R. Co.*, 185 N. Y. 335; *People ex rel. M. R. Co.* v. *Barker*, 165 N. Y. 305; *Sander* v. *State of New York*, 182 N. Y. 400; *Corry* v. *L. & E. Ry. Co.*, 29 Beav. 263.)

GRAY, J.   The plaintiff demands that the defendant account for the net income of its passenger traffic on certain portions of its railway, for certain years, and that it pay five per cent. thereof.   Such an obligation was imposed by section 9 of chapter 489 of the Laws of 1867 upon the West Side and Yonkers Patent Railway Company; to whose rights, franchises and interests the defendant has succeeded and to whose obligations, in the above respect, it is subject.   That company, at first, authorized to construct an experimental line of elevated railway for the distance of half a mile, upon an ultimate approval, as to safety and dispatch, to be obtained in a

manner prescribed by the statute, was constructed from Battery place, through Greenwich street, northerly and along Ninth avenue. Section 9 of the act provided that "the said company shall pay a sum of five per cent. of the net income of said railway from passenger traffic upon Manhattan Island into the treasury of the City of New York, in such manner as the legislature may direct, as a compensation to the corporation thereof for the use of the streets aforesaid." Such direction was given by an act, passed in 1868, (Chap. 855, Laws of 1868); which provided that the company, or its successors, should, quarter-annually, "pay to the comptroller of the city of New York five per cent. of its net income, for the purpose of being expended in the improvement of the condition or appearance of the streets, or parts of streets or avenues or places, through which said railway shall be constructed," etc. (Sec. 2.)  The act, also, gave certain privileges to the company; such as an extension of the time for construction, a right to change the kind of motor and a permission to amend the corporate name.  The plaintiff's right to maintain the action has been passed upon by this court, (143 N. Y. 1), upon an appeal from an interlocutory judgment. We, then, held the act of 1868 to be unconstitutional, for the violation of the provision of the Constitution that "a private, or local, bill shall express but one subject, which shall be expressed in its title;" but, inasmuch as the defendant had taken advantage of privileges extended by the act, we, also, held that it was estopped from disputing its liability. It was decided that the liability to the city was imposed by the act of 1867 and that the act of 1868, merely, gave formal directions in regard to the manner in which it should be discharged; that the liability comprehended only the Ninth Avenue route and that the question of the proper construction of the words "net income" should be left to be decided after an accounting had been had. The accounting has now been had before a referee, who reached the conclusion that, in determining the net income from passenger traffic, there should be deducted from the gross income "the sum expended for station expenses, train expenses, main·

tenance of railway and general expenses" and that the defendant was not entitled to have deducted the sum paid for taxes, rental damages and interest. There were included in his report findings, which show the amounts paid in each year for those items; presumably, for the enlightenment of the courts upon their review of the judgment. The Appellate Division affirmed the judgment and the only question presented for our consideration is whether the taxes, rental damages and interest on bonds should have entered into the computation of the net income.

The legislative intent is clear enough that the company was to pay five per cent. of the net income of its railway from passenger traffic as a compensation for the use of the streets; or, as the purpose was declared to be by the act of 1868, for the improvement of the condition of the streets and public places through which the railway should be constructed. Commissioners appointed under the act were to expend the revenues received by the city from the specified percentage in the promotion of the purposes aforesaid. The words used in the act should be taken in their ordinary sense and should be given such force as would effectuate the legislative purpose. We think that, when so taken, the "net income" means the gross receipts from passenger traffic, less the general expenses of operating the road, as defined by the referee. Net income, like net earnings, is that sum which remains after deducting from the gross income, or earnings, the cost of producing them and any indebtedness of the company to government, or to private parties, is not a part of the expenses of operating the railway, as ordinarily understood. That is something which is usually paid out of the net income, or earnings. This is a reasonable and a just interpretation of the provisions of the statutes, if the compensation of the city was to be actual and not problematical. I think it would be quite unreasonable to construe the statute as measuring the city's compensation by a percentage upon that fractional part of the net income of the corporation, which might remain after taking therefrom such items as constituted general charges

against the corporation.   The legislature could not have intended a vain thing in granting compensation.   It must have intended a basis of compensation, which, in the nature of things, if the scheme did not result in utter failure, would be certain.   That rental damages should not enter into the computation of the net income is evident enough, for the reason that section 11 of the act of 1867 imposed such upon the company as a burden, additional to that which had been imposed by section 9.   But, independently, how can they be considered as entering into the cost of operating the railway? They represent the compensation, which abutting owners would be entitled to be paid for any trespass upon their easements in the streets and their payment is a general charge upon the corporation.   Nor do we doubt that interest on moneys borrowed for expenditure in acquiring and constructing the railway is anything but a debt of the corporation, which is to be discharged out of net earnings.

With respect to the items of the annual taxes, the argument is that their amount, as found by the referee, must be excluded in the computation of net income ; inasmuch as they are " indispensable to the production and continuance of any income " and " are independent of the volition " of the company.   The finding of the referee on the subject of taxes is that, in the years mentioned, such were paid " upon the franchises and personal property " of the company.   The amount of any tax upon the particular part of the railway structure and properties, in question, is not separately stated.   We do not think that it was intended by the legislature that taxes should be considered in computing the net income.   In a general sense, taxes, as well as interest and rental damages, are corporate expenses, which, as between the company and its stockholders, must be taken into account, when determining the net income for dividend purposes; but the statutory provision for the plaintiff's compensation could not have contemplated their payment, in preference to the city.   Sections 2 and 3 of the act of 1868, which may be referred to in explanation of the legislative intent and purpose, (143 N. Y. 1), provide that the percent-

age to be paid to the city of the net income was to be expended in the improvement of the streets, through which the railway was to be constructed, and that the company should file its bond for the faithful payment of the revenue and the payment should be "the legal compensation in full for the use and occupancy of the streets  *  *  *  and shall constitute an agreement  *  *  *  entitling the company, or its successors, to the privileges and rates of fare  *  *  *  and the claims of the city therefor shall constitute a lien on the railway  *  *  *  having priority over all others." These are strong and pregnant words, expressive of a purpose to make the compensation to the city as substantial as it was possible to make it. There is another answer to the defendant's contention concerning the question of the taxes, of a technical nature. The referee did not separate, or state, the proportion of, any taxes, assessable upon the portion of the company's railway, from the operation of which the company receives this income. Nor was he requested to do so; if it were possible. He stated what taxes had been assessed upon "the franchises and personal property," which were chargeable to the Ninth avenue portion of the company's system, and it is those which the defendant contends should be deducted from the gross receipts, in addition to what were, strictly, operating expenses. That contention was, certainly, erroneous; however debatable we might assume the question to be, if the amount of any tax assessed upon this particular portion of the company's railway property had been apportionable and had been found.

We think that the referee's conclusions were correct and that the order of the Appellate Division, affirming the judgment upon his report, should be affirmed.

WILLARD BARTLETT, J. I vote for affirmance, but in so doing I do not wish to be understood as holding that the appellant might not be entitled to the deduction of such taxes as it has paid upon tangible property actually employed in its passenger traffic on that portion of its road to which this suit

relates.    There is no exception, however, which raises this question on the present appeal, so as to permit us to decide it now.

VANN, WERNER and CHASE, JJ., concur with GRAY, J.; CULLEN, Ch. J., concurs with GRAY J., without, however, expressing any opinion as to the taxes, if the question were raised; WILLARD BARTLETT, J., concurs in result in memorandum, with whom HAIGHT, J., concurs.

Judgment affirmed, with costs.