JIRO YOSHIZAWA *v.* HARRY R. HEWITT, ET AL.

No. 1976.

ARGUED OCTOBER 29, 1930.          DECIDED NOVEMBER 7, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

The petitioner is a duly licensed physician and sur-
geon. Notice was served upon him to appear before the
board of health of the Territory to answer the following
charges: that "wilfully and without lawful justification or
excuse," he "did procure, aid or abet in procuring a
criminal abortion and/or miscarriage by and upon the
body of one Gladys Manley and upon the body of one
Esther Hartig;" that "through lack of skill, or neglect to
apply it if possessed," he "did treat one Gladys Manley
and one Esther Hartig for a suspected, threatened abor-

tion, in a manner contrary to accepted rules or standards of practice of the medical profession in the Territory of Hawaii and was guilty of professional misconduct or displayed gross carelessness and/or manifest incapacity as a physician and surgeon."

The petitioner appeared with his attorney before the board. After some evidence had been adduced against him he instituted before a circuit judge at chambers a suit for an injunction in which he prayed that all further proceedings before the board be enjoined. The trial judge held that the respondent Samuel W. Tay was without legal right to sit as chairman of the board in the proceedings against the petitioner and that the statute which purports to authorize revocation of physicians' licenses for "gross carelessness" and "manifest inacapacity" is vague and uncertain and therefore unconstitutional and void. A permanent injunction was issued as prayed for. From a decree to that effect the case comes to this court by appeal.

The only questions presented to us for decision are whether the respondent Tay had lawful authority to preside at the meetings of the board in which the charges against the petitioner were being investigated and whether the statute purporting to authorize the proceedings is unconstitutional.

The first of these is a question of statutory construction. Prior to the commencement of the hearing before the board Dr. F. E. Trotter, its duly appointed president, left the Territory and was absent therefrom during all of the time that the hearing was being had. Before leaving the Territory Dr. Trotter, with the approval of the governor of the Territory, designated Samuel W. Tay, who at the time was the sanitary engineer of the board and its employee, to act during the absence of the president. Section 169, R. L. 1925, provides as follows: "The superintendent of public instruction, the surveyor, the commis-

sioner of public lands, the superintendent of public works, the president of the board of health, the president of the board of agriculture and forestry and any other officer for the performance of whose duties in his absence or illness no other provision is made by law, may, with the approval of the governor, designate some other officer in his department, bureau or office to act in his temporary absence or illness. Such designation shall be in writing and shall be filed in the office of the secretary of the Territory. Provided, however, that the respective heads of departments hereinabove designated shall be responsible and liable on their official bonds for all acts done or performed by the persons designated to act in their absence as herein prescribed.

"Such persons so designated shall, during the temporary absence or illness of the head of such office, have all the powers of the head of such office and shall be known as the acting superintendent, surveyor, commissioner or president, as the case may be, but shall not be entitled to any additional compensation while so acting." The construction of this provision, standing by itself, offers no difficulties. It is clear and unambiguous. Under it an acting president of the board of health has during the absence of the president *all* of the powers, not merely some of them, of the president. The argument to the contrary is based upon what is claimed to be a partially inconsistent provision in section 909, R. L. 1925. The latter section provides in part: "There shall be a board of health for the Territory of Hawaii consisting of seven members, four of whom shall be laymen, two physicians, and the attorney general, ex-officio. The members of the board shall be appointed by the governor, who shall also appoint the president, with the advice and consent of the senate of the Territory, and shall be commissioned for two years. All of the members of the board shall serve without pay,

except the president, whose salary shall be provided by the legislature. The president of the board shall preside at the meetings of the board, and in case of his absence, any member of the board may be chosen to preside over the meetings of the board."

The contention of the petitioner is that section 909 applies and that it requires that a member of the board shall be chosen to preside over its meetings and that a person who is not a member of the board cannot lawfully be chosen for that purpose. In our opinion the two sections are not inconsistent with each other. Section 169 provides specifically for the appointment of an acting president of the board in case of the absence of the president from the Territory and clearly gives to the acting president all of the powers of the president during the latter's absence. During the absence of the president the acting president is the president of the board and the provision of section 909 that in the absence of the president "any member of the board may be chosen to preside over the meetings" can have no application when the acting president is present and able and willing to serve in that capacity. Section 909 does apply when the president (whether the one originally appointed and ordinarily serving or the one appointed to serve by substitution for him) is absent. Respondent Tay was acting lawfully as president of the board. .

Section 1029, R. L. 1925, provides that "licenses to practice medicine and surgery may be revoked by the treasurer at any time for the following causes," naming different causes in ten subsections, the tenth reading "gross carelessness and manifest incapacity." It is plain from the authorities and upon principle, and it is not disputed in this case, that the power to revoke licenses of physicians and surgeons may, like the power to grant the licenses, lawfully be vested in administrative boards, such

as our board of health; and that, while the right of a licensed physician to practice his profession may be regarded as property, due process of law does not require a judicial hearing but is satisfied by a hearing before an administrative board, upon notice and an opportunity to be heard. This latter likewise is not disputed in the case at bar.

As to whether "unprofessional or dishonorable conduct" is too vague a statutory description of causes for cancellation of licenses, the authorities are in conflict. Upon the precise point before us relating to the sufficiency of "gross carelessness" and "manifest incapacity," no cases have been called to our attention by counsel, nor have we found any. But, on principle, we think the designation is sufficient. The expressions "gross carelessness" and "manifest incapacity" are terms of ordinary use and have well known significations, both in court and out of court. "Where words having a well-defined meaning at common law and in ordinary use are used in a statute, the presumption is that they are used in their usual sense." *State* v. *Purl,* 128 S. W. (Mo.) 196, 201. Repeatedly cases are submitted to juries and to judges upon the issue of whether a person was guilty of "carelessness" or of "gross carelessness" or whether his acts and omissions were characterized by due and proper care and caution. In cases involving large sums of money and important rights many a verdict has turned upon the issue of carelessness. Similarly juries and judges are frequently called upon to decide issues of "heedless driving" and of the "reasonableness" of acts and omissions and of values or sums of money. It is true that in all cases of this class different judges and different juries might reach conflicting conclusions upon the same evidence, but that has never been deemed to be a sufficient reason for discarding the use of the terms mentioned or for holding the laws unconstitu-

tional which authorize their use. Neither the petitioner in this case nor his attorney nor anyone else interested need have been misled as to what was meant when he was charged with "gross carelessness" and with "manifest incapacity." The terms gave ample and sufficiently definite notice to the accused of what he was charged with. In our opinion subsection 10 of section 1029 is not unconstitutional.

The appeal is sustained. The decree appealed from is reversed and a decree will be entered in this court in conformity with the foregoing views.

*C. B. Dwight* (*G. R. Corbett* with him on the brief) for petitioner.

*E. R. McGhee,* Third Deputy Attorney General (*H. R. Hewitt,* Attorney General, with him on the briefs), for respondents.