# HAWAII CONSOLIDATED RAILWAY, LIMITED, A HAWAIIAN CORPORATION, *v.* WILLIAM BORTHWICK, TAX COMMISSIONER OF THE TERRITORY OF HAWAII.

## No. 2216.

ARGUED JUNE 9, 10, 1937.                    DECIDED AUGUST 26, 1937.

BANKS AND PETERS, JJ., AND CIRCUIT JUDGE STAFFORD
IN PLACE OF COKE, C. J., DISQUALIFIED.

270

OPINION OF THE COURT BY PETERS, J.

The issues herein involve the 1934 tax liability of the Hawaii Consolidated Railway, Limited, a public utility, upon its gross income from its public utility business for the calendar year 1933, under the provisions of Act 43, 2d Sp. S. L. 1932, as amended by Act 183, L. 1933. Those portions of the Act as amended that are material to our consideration are quoted in the margin.[1] The taxpayer, in

[1] 2d Sp. S. L. 1932, Act 43, § 1, Am. L. 1933, Act 183, § 1. "Sec. 1. Public utility tax. In lieu of all taxes other than income taxes, the specific taxes imposed by Chapter 102 of the Revised Laws of Hawaii 1925, as amended, and the fees prescribed by Chapter 132 of said Revised Laws, as amended, and any tax specifically imposed by the terms of its franchise, there shall be levied and assessed upon each public utility within the Territory a tax of such rate per cent of its gross income each year from its public utility business as shall be determined in the manner hereinafter provided."

2d Sp. S. L. 1932, Act 43, § 2. "Section 2. Definitions. (a) The term 'public utility' as used in this Act shall have the meaning given that term in section 2208, as amended, of the Revised Laws of Hawaii 1925. (b) The term 'gross income' shall have the meaning of that term as used in section 2207 of said Revised Laws. (c) The term 'net

computing its net income for the purpose of determining the rate to be applied to gross income from its utility business, deducted from its gross operating income interest accrued and paid by it during the taxable year on redemption bonds issued for obligations incurred in the construction of its railroad. The deduction of this interest was disallowed by the tax commissioner. The effect of the disallowance was to increase the rate of the tax of the taxpayer from 5.1796% to 7.4967%.

The taxpayer contends: 1. That interest upon bonds issued by a public utility for capital expenditures is an "operating expense" and the amount thereof paid during the taxable year is a deductible item in computing the net income, the ratio of which to gross income from the public utility business determines the rate of the tax and 2. that

operating income' means the operating revenues less the operating expenses and tax accruals, including, in the computation of such revenues and expenses, debits and credits arising from equipment rents and joint facility rents.

"Section 3. Returns. Each public utility on or before March 20 in each year shall file with the tax collector for the division within which the principal office of the public utility is maintained, a return in such form as the tax commissioner may prescribe, showing its taxable gross receipts for the preceding calendar year. In case any public utility carries on other lines of business than its public utility business, the receipts therefrom shall not be subject to tax under this Act, but the same tax liabilities shall attach to such public utility on account of such other lines of business and the real property used in connection therewith as would exist if no public utility business were done.

"Section 4. Rate how determined. The rate of the tax upon the gross income of any public utility for the purposes of this Act shall be determined as follows: If the ratio of the net income of the company to its gross income is fifteen per cent (15%) or less, the rate of the tax on gross income shall be five per cent (5%); for all companies having net income in excess of fifteen per cent (15%) of the gross, the rate of the tax on gross income shall increase continuously in proportion to the increase in ratio of net income to gross, at such rate that for each increase of one per cent (1%) in the ratio of net income to gross, there shall be an increase of one-fourth of one per cent ($\frac{1}{4}$%) in the rate of the tax. The following formula may be used to determine such rate, in which formula the term 'r' is the ratio of net income to gross income, and 'x' is the required rate of the tax on gross earnings for the utility in question:

$$x = (1.25 + 25r)\%;$$

provided, however, that in no case shall 'x' be less than five per cent (5%)."

the ascertained net income to be employed in computing the tax is limited to the net income of the taxpayer from its public utility business. With the taxpayer's first contention we cannot agree. We do agree however with the taxpayer's second contention that the net income to be employed to determine the rate of tax to be applied to gross income is limited to the net income from the public utility business. The limitation upon the sources of income expressed in section 1 of the Act necessarily implies that the term "net income" employed in section 4 of the Act is similarly limited. Whatever is necessarily or plainly implied in a statute is as much a part of it as that which is expressed. (*Irwin* v. *Ahia,* 29 Haw. 1, 5; *Thomas* v. *Norton,* 8 Haw. 67, 70.) Hence the sole remaining question for decision is whether in computing the net annual income of a utility from its public utility business for the purpose of determining the rate of tax to be applied to its gross income from the same source, interest paid by the utility during the taxable year upon its outstanding bonds theretofore issued for capital expenditures is an "operating expense" and hence is a deductible item against such gross income.

The question depends for its solution upon the meaning to be attached to the term "net income" as that term is employed in section 4 of the Act. For accordingly as that term is used depends the rate of the tax to be applied to the gross income of each utility from its public utility business. It is a generally accepted rule of statutory construction that unless it appears by the context or otherwise in the statute a different sense was intended, words are to be given their ordinarily accepted meaning. As said previously by this court, its "plain and obvious meaning," *Kauai* v. *McGonagle,* 33 Haw. 915; in its "usual sense," *Yoshizawa* v. *Hewitt,* 31 Haw. 625; "in its known and ordinary significance," *Hollinger* v. *Kumalae,* 25 Haw. 669,

686; in its "commonly accepted meaning," *Estate of Castle,* 25 Haw. 108, 118; in its "usual sense," *Ottmann* v. *Young,* 12 Haw. 303, 306; *Thomas v. Norton, supra.*

No claim is made by the parties that technical meanings are to be attributed to any of the words used in the Act and we accord them none.

Net income presupposes the existence of a gross income of which the former is the excess or remainder so that to appreciate the concepts of the term "net income" those of the terms "income" and "gross income" become material. "Income" as generally understood is the gain derived from capital, from labor or from both combined. (*Stratton's Independence* v. *Howbert,* 231 U. S. 399, 415.) As an adjective qualifying the term "income" the word "gross" implies income from any and all sources. In the case of a utility carrying on other lines of business than its public utility business gross income is classified accordingly as it is derived from utility or nonutility business. In the instant case by reason of the limitations contained in section 1 of the Act as amended and the definition of gross income as contained in subparagraph (b) of section 2 of the Act we are alone concerned with that part of the gross income of public utilities that has its source in public utility business. As generally understood the word "net" when used in connection with the term "income" means the excess of or remainder from gross income after the deduction from gross income of the same period of the aggregate of all items of cost and expenses incurred and accrued in the production of gross income excluding capital expenditures. While the term "net income" is not synonymous with the term "net earnings" the presence of the word "net" in both terms makes the following definition of net earnings not inappropriate: "As a general proposition, net earnings are the excess of the gross earnings over the expenditures defrayed in producing them, aside from, and exclusive of,

the expenditure of capital laid out in constructing and equipping the works themselves." *Union Pacific R. R. Co. v. United States,* 99 U. S. 402, 420. But interest upon bonds issued for capital expenditures is not usually spoken of as a cost or expense in the production of gross income. On the contrary it is ordinarily understood as a general charge and has no relation to the gross income of an enterprise. "A mortgagee of the property * * * of a quasi public corporation, such as a railroad company, obtains a lien upon the net income of the company after the current expenses of operation incurred in the ordinary course of business are paid, and impliedly agrees that the gross income shall be first applied to the payment of these current expenses, before the net income to which he is entitled arises." *Illinois Trust & Savings Bank* v. *Doud,* 105 Fed. 123, 148. "It is undoubtedly true that operating expenses, debts due to connecting lines growing out of an interchange of business, and debts due for the use and occupation of leased lines are chargeable upon gross income before that net revenue arises which constitutes the fund applicable to the payment of the interest on the mortgage bonds." *St. Louis, etc. Railroad* v. *Cleveland etc. Ry.,* 125 U. S. 658, 673. "The interest on these bonds do not, any more than the interest of any other bonds of the company, form any proper portion of the expenditures of the road to be considered in estimating the net earnings mentioned [under the statute]. But whilst we decide against the company on this point, we are clearly of opinion that the annual interest accruing on these particular bonds are to be first paid out of the net earnings." *Union Pacific R. R. Co.* v. *United States, supra,* p. 424. In the case of *City of New York* v. *Manhattan Ry. Co.,* 192 N. Y. 90, 93, the utility company was required by the local statute to pay into the treasury of the City of New York "five per cent. of the net income of said railway from passenger traffic upon Manhattan

Island." The intermediate appellate division held: "The remaining claim of the defendant is that the interest on its mortgage bonds or other money borrowed for the construction of its road should have been deducted. But what has been said before, I think, disposes of this claim. It was a general charge of the company, and had no relation to the income of the company received from its passenger traffic." *City of New York* v. *Manhattan Ry. Co.,* 104 N. Y. S. 609, 611. Upon final appeal the court said: "Net income, like net earnings, is that sum which remains after deducting from the gross income, or earnings, the cost of producing them and any indebtedness of the company to government, or to private parties, is not a part of the expenses of operating the railway, as ordinarily understood. * * * Nor do we doubt that interest on moneys borrowed for expenditure in acquiring and constructing the railway is anything but a debt of the corporation, which is to be discharged out of net earnings." *City of New York* v. *Manhattan Ry. Co.,* 192 N. Y. 90, 94, 95, 84 N. E. 745. Interest charges belong to the same general classification as dividends both common and preferred and are merely one of the forms of the distribution of net income. "All payments of interest on the bonded indebtedness of the company should be charged to capital interest account, and not to current expenditures. Though payable out of earnings before any dividend can be made to stockholders, they cannot be deducted for the purpose of ascertaining the 'net earnings' of the road, as that term is to be understood in the sixth section of the act. The bonded debt incurred for the purpose of construction and equipment is but another form of capital, analogous to preferred stock; and the interest accruing thereon is in the nature of a dividend on such capital. It has nothing to do with, and cannot affect, the amount of the net earnings of the road." *Union Pacific R. R. Co.* v. *United States, supra,* pp. 422, 423.

Our attention has been called to the definitions of net income as used in the Federal and territorial income tax laws and as construed in wills and trusts. We find these definitions of no assistance. Those contained in the income tax laws are purely statutory. The term when used in wills and trusts is employed in its proprietary sense. According to its ordinarily accepted meaning we therefore conclude that the annual net income of a utility from its utility business is the excess of or the remainder existing after the deduction from gross income from its utility business of the same period of the aggregate of all items of costs and expenses incurred and accrued in the production of the same, exclusive of contractual interest upon indebtedness for capital expenditures. And as thus defined that term was employed in section 4 of the Act unless the context evinces a different intention. In other words, did the Act use the term "net income" in any other or different sense than ordinarily and usually understood in connection with a tax upon public utilities? Neither of the terms "gross income" nor "net income" are defined in the Act. It is true that in subparagraph (b) of section 2 it is expressly provided that the term "gross income" shall have the meaning of that term as used in section 2207, R. L. 1925. But the term "gross income" as used in the section referred to is merely limited therein to gross income from utility business and the effect of the definition is a mere reiteration of the limitation contained in section 1 of the Act. "Net operating income" is however defined in the Act and throws considerable light upon the meaning to be attributed to the term "net income" as employed in section 4 of the Act.

Considerable confusion was interjected into the consideration of this case by the mutual assumption of the parties that the phrase "as used in this Act" limiting the definition of "public utilities" contained in subparagraph (a)

of section 2, also qualified the definition of "net operating income" defined in subparagraph (c) of section 2 and that the legislature "mistakenly" used the words "net income" in section 4 of the Act instead of the words "net operating income" resulting in the claim by the tax commissioner that in order to arrive at the plainly expressed intention of the legislature this court would be justified in construing the words "net income" wherever they appeared in section 4 of the Act as meaning and referring to "net operating income" as defined in subparagraph (c) of section 2 of the Act, and the rejoinder by the taxpayer that to do so this court would usurp legislative function and in effect rewrite the Act. In our opinion both parties are wrong. The term "net operating income" is not qualified by the qualifying phrase "as used in this Act." The meaning of the term is not limited in its application to the term as elsewhere used in the Act. The term "net operating income" is not elsewhere used in the Act. The construction of the parties renders the paragraph meaningless and leads to an absurdity. The legislature in using the term "net operating income" referred advisedly to a term necessarily involved in the method prescribed by it to determine the rate of tax to be applied and subparagraph (c) of section 2 of the Act is the definition of that term. Statutes frequently contain definitions of terms used therein. By analogy it is competent for the legislature to insert in an Act a definition of a term necessarily involved in the operation of the Act. In our opinion the meaning attributed to the term "net operating income" in subparagraph (c) of section 2 is not and was not intended by the legislature as a statutory definition of that term as it might elsewhere appear in the Act but is and was intended by it as a definition of a necessary and indispensable item in computing net income from utility business by which ultimately might be determined the rate of tax to be applied to gross income.

In the ordinary commercial enterprise gross income is classified accordingly as it is derived from the operating or nonoperating departments of the business and is ordinarily referred to as gross operating and gross nonoperating income, an instance of the latter of which is income from the investments of surplus and otherwise. This classification is equally applicable to gross income from utility business as instanced in the case of a railroad's gross operating income from its railroad and gross nonoperating income from investments of its surplus from utility business. The statute, in using the words "gross income from its utility business," clearly contemplates gross income from both its operating utility business and its nonoperating utility business. We construe the use of the term "net operating income" as contained in subparagraph (c) of section 2 of the Act as referring to the former class of income. As thus construed the presence of the definition of the term "net operating income" is intelligent and logical. The Act becomes harmonious in all its parts. The absurdity of qualifying the term "net operating income" by the phrase "as used in this Act" appears. And "effect may be given to every section, clause or part of it [the Act]." *Lyman* v. *Maguire,* 17 Haw. 145. (See also *Kamahu* v. *Bicknell,* 22 Haw. 209, 213; *In re Pringle,* 22 Haw. 557, 564; *Thomas* v. *Norton, supra.*) Conceding to each sentence and paragraph its presence as a necessary part of intelligent expression; according to the terms employed the plain and ordinary meaning in which they are accustomed to be used; giving to the definition of "net operating income" its appointed part, it appears that the term "gross income" referred to in section 1 and subparagraph (c) of section 2 of the Act includes operating and nonoperating income from utility business; that by subparagraph (c) of section 2 there is to be included in gross operating revenues credits arising from equipment

rents and joint facility rents; that by the same paragraph, in order to determine "net operating income," there may be deducted from gross operating revenues "operating expenses and tax accruals, including, in the computation of such * * * expenses, debits * * * arising from equipment rents and joint facility rents." In other words, a complete setup is provided by the Act for computing net income from utility business. As so understood the Act is consistent with the adoption of the ordinarily accepted meaning of the term "net income" as the meaning to be attributed to that term as employed in section 4 of the Act. And as so adopted the interest accrued and paid by the taxpayer during the taxable year cannot be considered as an "operating expense" within the meaning of that term as employed in subparagraph (c) of section 2 of the Act. No more so may it be considered as a deduction from gross nonoperating income from utility business.

There are additional reasons justifying our conclusion. Those are the subject matter of the Act, the objects and purposes it was sought to attain and the method prescribed for the determination of the amount of the tax.

At the outset it should be borne in mind that "in construing a statute the object is always to ascertain and give effect to the intention of the legislature." *W. Au Hoy* v. *Ching Mun Shee,* 33 Haw. 239, 241. (*Honolulu Rapid Transit Co.* v. *Wilder,* 30 Haw. 685, 690; *Irwin* v. *Ahia, supra,* p. 5; *Estate of Castle, supra; Kamahu* v. *Bicknell, supra; Shaw* v. *Boyd,* 19 Haw. 83, 85; *Re Taxes Oahu College,* 15 Haw. 18, 19; *The King* v. *Young Tang,* 7 Haw. 49, 58.) The subject matter of the Act is a tax upon public utilities in lieu of *ad valorem* real and personal property taxes.

On January 1, 1934, real and personal property within the Territory were subject to *ad valorem* taxes under the provisions of Act 40, 2d Sp. S. L. 1932, and Act 9, L. 1933-4.

By section 1 of the Act in question, as amended, it is expressly stated that the public utility tax thereby imposed is "in lieu of all taxes other than income taxes, the specific taxes imposed by Chapter 102 of the Revised Laws of Hawaii 1925, as amended, and the fees prescribed by Chapter 132 * * * and any tax specifically imposed by the terms of its franchise." In section 3 of the Act, as amended, it is also expressly provided that "in case any public utility carries on other lines of business than its public utility business, the receipts therefrom shall not be subject to tax under this Act, but the same tax liabilities shall attach to such public utility on account of such other lines of business and the real property used in connection therewith as would exist if no public utility business were done." The only other taxes from which utilities were not exempted in respect to their utility business were the existing *ad valorem* real and personal property taxes.

Authorities on taxation have uniformly recognized with approval the efforts of some of the States to avoid the difficulties encountered in *ad valorem* assessments of the real and personal property of utilities actually employed in the utility business by substituting a tax upon gross incomes from utilities from utility business, upon net income from the same source or both. (See Lutz, Public Finance [2d ed.] p. 462, et seq.; Luce, "Assessment of Real Property for Taxation," 35 Mich. L. Rev. 1217; Ravage, "Valuation of Public Utilities for Ad Valorem Taxation," 41 Yale L. J. 487.) And this method of taxation of real and personal property of utilities within the taxing jurisdiction has the unqualified approval of the courts. It will suffice to cite the leading cases on the subject decided by the United States Supreme Court. (See *Cudahy Packing Co.* v. *Minnesota,* 246 U. S. 450, 453; *United States Express Co.* v. *Minnesota,* 223 U. S. 335, 346; *Galveston, Harrisburg, etc. Ry. Co.* v. *Texas,* 210 U. S. 217, 226, 227.)

The method prescribed for the determination of the amount of the tax is illuminating. The earning capacity of property devoted to the utility business as reflected by gross income from utility business and the ability to pay as reflected by net income from the same source, in other words, "profits" from utility business, are the sole considerations in determining the amount of the tax. No flat rate is imposed. The rate is a varying one depending for its determination in each individual case upon the ratio obtaining between the net and gross income from utility business. No claim is made by the taxpayer that the method prescribed is invalid. And we must assume that as devised it is a valid one in respect to the class to which it applies and imposes a tax comparable to the *ad valorem* real and personal property taxes otherwise imposed.

It is reasonable to assume in the light of the subject matter of the tax that the method prescribed for the computation of the tax did not contemplate a fluctuant variant such as interest upon indebtedness for capital expenditures. Property is no less valuable because it is subject to mortgage. Nor is the mortgagor, in the case of *ad valorem* assessments, entitled to an apportionment of a tax on property to the extent of his interest therein. (*Paddell* v. *City of New York,* 211 U. S. 446, 450, 451.) If, as we believe, the tax imposed by the Act is a substitute for *ad valorem* taxes a decrease in the rate reflected by the deduction of interest would reflect a corresponding reduction in valuation and make for inequality accordingly as property was encumbered or unencumbered and this is so whether the tax be considered as a substitute for an *ad valorem* assessment made separately or pursuant to the "unit rule." By the Act utilities are put in a special class by themselves. If the taxpayer's contention is correct, by the method prescribed for the determination of the rate of the tax to be applied to gross income, accordingly as interest upon bonds

issued for capital expenditures is present or absent, the rate is correspondingly decreased or increased. In other words, a premium is accorded the presence of borrowed capital to the prejudice of unencumbered capital. As to the class affected, the Act should operate uniformly and aside from any inequality that Federal or local law might condemn, it is reasonable to assume that the legislature intended complete equality as to all utilities subject to the Act. Taking the Act by its four corners it seems clear that the legislature intended that in determining the tax rate to be imposed against a public utility the net income to be employed is the net income of the utility from its utility business prior and not subsequent to the deduction of any contractual interest upon the indebtedness of the utility for capital expenditure, such as interest on bonds issued for that purpose.

A judgment consistent with the foregoing opinion will be signed upon presentation.

*H. L. Wrenn (Anderson, Marx, Wrenn & Jenks; Smith, Warren, Stanley & Vitousek; Robertson & Castle* on the briefs) for the taxpayer.

*J. Wiig,* Third Deputy Attorney General *(W. B. Pittman* and *S. B. Kemp,* Attorneys General, with him on the briefs), for the tax commissioner.