## HAWAII CONSOL. RY., Limited, v. BORTHWICK, Tax Com'r.

### No. 8852.

Circuit Court of Appeals, Ninth Circuit.
June 23, 1939.

Anderson, Marx, Wrenn & Jenks, Heaton L. Wrenn, Stanley, Vitousek, Pratt & Winn, Montgomery E. Winn, Robertson, Castle & Anthony, A. L. Castle and Norman W. Applegarth, all of Honolulu, T. H., for appellant.

J. V. Hodgson, Atty. Gen., and Jon Wiig, Deputy Atty. Gen., Territory of Hawaii, for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

The case is here on appeal from the Supreme Court of Hawaii. It involves the tax liability of appellant Hawaii Consolidated Railway upon its gross income from its public utility business for the calendar year 1933, under Act 43, 2d Sp.S.L.1932, as amended by Act 183, L.1933. The amended act is shown on the margin.[1]

---

[1] "Sec. 1. Public utility tax. In lieu of all taxes other than income taxes, the specific taxes imposed by Chapter 102 of the Revised Laws of Hawaii 1925, as amended, and the fees prescribed by Chapter 132 of said Revised Laws, as amended, and any tax specifically imposed by the terms of its franchise, there shall be levied and assessed upon each public utility within the Territory a tax

The appellant in January, 1934, filed with the tax commissioner of the territory a return as the act requires. The return showed the taxpayer's operating revenues from its utility business for 1933 and the deductions therefrom. In computing its net income for the purpose of arriving at the rate of tax on its gross income appellant deducted interest accrued and paid during the year on redemption bonds issued for indebtedness incurred in the construction of its railroad. The tax commissioner disallowed the interest deduction, and as a result the rate of tax upon appellant's gross utility income was increased from 5.1796%, as shown by the return, to 7.4967%. An additional tax was accordingly assessed.[2]

The controversy concerning the right to deduct interest was presented to the territorial Supreme Court on an agreed case stating the facts upon which the controversy depended, in conformity with a statute (§§ 3616 to 3619, inc., Rev.Laws of Hawaii 1935). Under this statute the formal submission takes the place of pleadings, and the issues for the court's determination are controlled and limited thereby.[3] The court said that the sole question for decision on the controversy submitted was "whether in computing the net annual income of a utility from its public utility business for the purpose of determining the rate of tax to be applied to its gross income from the same source, interest paid by the utility during the taxable year upon its outstanding bonds theretofore issued for capital expenditures is an 'operating expense' and hence is a deductible item against such gross income."[4]

The solution of the question was thought to depend on the meaning to be attached to the term "net income" as used in § 4 of the act. The court held that the term as there employed means the taxpayer's net

---

of such rate per cent of its gross income each year from its public utility business as shall be determined in the manner hereinafter provided."

"Sec. 2. Definitions. (a) The term 'public utility' as used in this Act shall have the meaning given that term in section 2208, as amended, of the Revised Laws of Hawaii 1925.

"(b) The term 'gross income' shall have the meaning of that term as used in section 2207 of said Revised Laws.

"(c) The term 'net operating income' means the operating revenues less the operating expenses and tax accruals, including, in the computation of such revenues and expenses, debits and credits arising from equipment rents and joint facility rents."

"Sec. 3. Returns. Each public utility on or before March 20 in each year shall file with the tax collector for the division within which the principal office of the public utility is maintained, a return in such form as the tax commissioner may prescribe, showing its taxable gross receipts for the preceding calendar year. In case any public utility carries on other lines of business than its public utility business, the receipts therefrom shall not be subject to tax under this Act, but the same tax liabilities shall attach to such public utility on account of such other lines of business and the real property used in connection therewith as would exist if no public utility business were done."

"Sec. 4. Rate how determined. The rate of the tax upon the gross income of any public utility for the purposes of this Act shall be determined as follows:

If the ratio of the net income of the company to its gross income is fifteen per cent (15%) or less, the rate of the tax on gross income shall be five per cent (5%); for all companies having net income in excess of fifteen per cent (15%) of the gross, the rate of the tax on gross income shall increase continuously in proportion to the increase in ratio of net income to gross, at such rate that for each increase of one per cent (1%) in the ratio of net income to gross, there shall be an increase of one-fourth of one per cent (¼%) in the rate of the tax. The following formula may be used to determine such rate, in which formula the term 'r' is the ratio of net income to gross income, and 'x' is the required rate of the tax on gross earnings for the utility in question:

$$x = (1.25 + 25r)\%;$$

provided, however, that in no case shall 'x' be less than five per cent (5%)."

[2] The gross income reported for the purpose of the tax was $788,321.67. From this the taxpayer made revenue deductions of $664,407.06, leaving a net of $123,914.61. The deductions included $73,063.53 interest on funded debt. Through disallowance of this deduction appellant's net operating income was increased to $196,978.14.

[3] Oleson v. Borthwick, 33 Haw. 766, 794; Oahu Ry. Co. v. Ewa Plantation Co., 15 Haw. 318, 321; Hilo Sugar Co. v. Mioshi, 8 Haw. 201, 206; Paahana v. Bila, 3 Haw. 725.

[4] The opinion below is reported in Hawaii Consolidated Railway v. Borthwick, 34 Haw. 269.

income from its public utility business; and that in its ordinary sense such net income is the remainder existing after deducting from the taxpayer's gross income from its utility business, for the same period, "the aggregate of all items of costs and expenses incurred and accrued in the production of the same, exclusive of contractual interest upon indebtedness for capital expenditures." Interest charges of this sort were thought to belong in the same category as dividends on common or preferred stock and to represent no more than one of the forms of the distribution of net income. Comparable holdings were believed to be found in Union Pac. R. Co. v. United States, 99 U.S. 402, 25 L.Ed. 274; Illinois Trust & Savings Bank v. Doud, 8 Cir., 105 F. 123, 148, 52 L.R.A. 481; St. Louis, A. & T. R. v. Cleveland, etc. Ry., 125 U.S. 658, 673, 8 S.Ct. 1011, 31 L.Ed. 832; City of New York v. Manhattan Ry. Co., 192 N.Y. 90, 84 N.E. 745.

■ In support of its interpretation of the phrase "net income", the court emphasized the fact that the tax is one imposed on public utilities in lieu of all other taxes save those specifically excepted in § 1. It said that on January 1, 1934 real and personal property in the territory were subject to ad valorem taxes under the provisions of Act 40, 2d Sp.S.L.1932, and Act 9, L.1933–4.[5] These real and personal taxes are not among the burdens to which utilities remain subject under the exceptions found in § 1. Concluding that the tax imposed is a substitute for ad valorem levies, the court was of the opinion that a construction which would effect a decrease in the rate of tax through the deduction of interest on funded debt would make for inequality as between public utilities having borrowed capital and those having unencumbered capital. It was reasonable to assume that the legislature intended to treat alike all utilities subject to the act. In the case of ad valorem assessments, it was pointed out, the taxpayer is not entitled to deductions because of mortgages against his property.

Special treatment was given to subparagraph (c) of § 2, defining the term "net operating income". This term is not used elsewhere in the act, but the court was of the opinion that its definition throws light upon the legislative meaning of the phrase "net income", as employed in § 4, and is consistent with the meaning accorded by the court to that phrase.[6]

■ Appellant urges that the defined term "net operating income", found only in § 2(c), should be ignored, and that the undefined term "net income" should be held to mean income remaining after subtracting from gross income all expenses, operating and non-operating, including interest on bonded debt. It claims that doubts concerning the interpretation of the statute should be resolved against the taxing power and in favor of the taxpayer. However, the territorial Supreme Court did not think the meaning of the term "net income" was doubtful. And in any event it was the exclusive province of that court to resolve doubts in interpretation. Our power to override decisions of the Supreme Court of Hawaii on questions of local law is not to be exercised in doubtful cases, but in cases of manifest error only. Waialua Agricultural Co. v. Christian et al., 305 U.S. 91, 59 S.Ct. 21, 83 L.Ed. 60.

■ "Net income" is an elusive term, and often remains so despite elaborate attempts to define it. It is an understatement to say that the term is reasonably susceptible of the interpretation given it below. Further elaboration of the point seems unnecessary. We find no manifest error in the court's decision and it must therefore be affirmed.

■ The agreed statement on which the case was submitted originally included the contention that the act is unconstitutional, but the contention was withdrawn. Questions concerning the validity of the statute were not pressed or considered below, the court merely observing that "no claim is made by the taxpayer that the method prescribed is invalid." Appellant here urges the question of constitutionality "as an aid in statutory construction." It contends that, as the act is open to two constructions, and the one given it by the taxing authorities would raise grave doubts as to its constitutionality,[7] the court should adopt the taxpayer's construction and thus obviate

---

[5] The latter reference seems to be in error. Apparently the act is Act 9 of the Special Session, 1933.

[6] Appellant complains of the court's holding that the term "gross income from its utility business" contemplates gross income from both operating and non-operating utility business. But since appellant reported only operating income it is not prejudiced by the views expressed.

[7] In support of its argument that the

289

any constitutional doubt. Assuming that the holding relied on raises doubts of that character, we are nonetheless in agreement with the construction given the act by the Supreme Court of Hawaii. The statute being so construed, appellant's waiver of the question of its constitutionality 'becomes operative and we are not entitled to consider it. Cf. Howat v. Kansas, 258 U.S. 181, 184, 42 S.Ct. 277, 66 L.Ed. 550.

Affirmed.

act, as construed, is of doubtful validity, appellant relies on Stewart Dry Goods

Co. v. Lewis, 294 U.S. 550, 55 S.Ct. 525, 79 L.Ed. 1054.