# IN THE MATTER OF THE TAX APPEAL OF ULUPALAKUA RANCH, INC.

## No. 4869.

FEBRUARY 22, 1971.

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON, JJ.,
AND CIRCUIT JUDGE MENOR IN PLACE OF
KOBAYASHI, J., DISQUALIFIED.

OPINION OF THE COURT BY MARUMOTO, J.

This is an appeal by the State director of taxation from a tax appeal court judgment ordering repayment of $13,064.73, plus interest and costs, to the taxpayer, Ulupalakua Ranch, Inc., hereafter referred to as URI. URI had previously paid the mentioned amount under protest pursuant to additional assessment of general excise tax made by the assessor of the second taxation division. The assessor made the assessment by treating the transaction whereby C. James Coberly, Jr., and his wife, Jean, obtained title to certain livestock of Ulupalakua Ranch as

a sale by URI to the Coberlys. The pertinent facts are stated below.

URI is a Hawaii corporation, incorporated on June 28, 1963, and wholly owned by C. Pardee Erdman, Jr. It is separate and distinct from Ulupalakua Ranch, Limited, also a Hawaii corporation, which will hereafter be referred to as URL. Before the acquisition of its capital stock by URI as stated below, URL was wholly owned by the Estate of Frank F. Baldwin, Deceased, and owned and operated a cattle ranch known as Ulupalakua Ranch in the Ulupalakua and Kipahulu sections of Maui.

Early in 1962, the Coberlys became interested in acquiring Ulupalakua Ranch, and retained Hamilton McCaughey, a broker specializing in ranching, as their agent to negotiate with the executors of the Baldwin Estate for its purchase. Upon initiating the negotiation, McCaughey found out that the executors were not interested in selling the ranch as such but were willing to sell all of the outstanding capital stock of URL.

The matter lay dormant for a year, for the asking price of the URL stock was much more than the amount the Coberlys were prepared to invest. In February 1963, McCaughey got Erdman interested. Erdman looked into the matter. The asking price was more than he could handle alone, but was within the amount he could manage to get together provided the Coberlys came in with the amount which they were originally prepared to invest.

After a discussion with the Coberlys, Erdman arrived at an agreement with them to try to make the purchase by pooling their resources with the idea that he would end up taking the Ulupalakua section and they would end up taking the Kipahulu section. Upon coming to such an agreement, Erdman and the Coberlys jointly retained the firm of Lewis, Buck and Saunders to attend to the legal details of the proposed acquisition. The negotiation with

the executors was conducted by McCaughey, who was retained by Erdman as his agent, in addition to being retained by the Coberlys as their agent.

On May 16, 1963, Erdman addressed a letter to the executors stating that he was primarily interested in acquiring the assets of URL but was willing to purchase its capital stock to accommodate the estate, and proposing to purchase the entire stock for $6,500,000, the purchase to be completed by him or a corporation to be organized by him. On the following day, the Coberlys wrote to Erdman that, in the event he or a corporation under his control acquired the capital stock of URL and became the owner of its assets, they would purchase from him, or the corporation under his control, as the case may be, the real estate of the Kipahulu section of the ranch, and certain specified livestock, for $2,000,000.

Then, on July 1, 1963, the following took place: (1) URI completed the purchase of the entire capital stock of URL; (2) URI dissolved URL; (3) the State director of regulatory agencies appointed William W. Saunders as trustee in dissolution of URL; (4) Saunders, as such trustee, conveyed to URI all of the assets of URL except a small portion thereof reserved for payment of debts and expenses; (5) URI executed and delivered to the Coberlys a deed to the real estate of the Kipahulu section of the ranch and a bill of sale of the livestock mentioned in the May 17, 1963, letter of the Coberlys to Erdman.

In completing the purchase of the capital stock of URL, URI availed itself of the $2,000,000 financing provided by the Coberlys. URL was liquidated pursuant to plan of liquidation adopted in compliance with section 332 of the Internal Revenue Code of 1954. The value of the livestock covered by the bill of sale was $372,500. URI did not have physical possession of such livestock at any time. Prior to the execution of the bill of sale, URI had not done

any business, aside from taking the actions described in the preceding paragraph.

The foregoing facts show that in form there was a sale of the livestock by URI to the Coberlys. But the tax appeal court found that there was no sale in substance because URI and the Coberlys had an agreement for a joint purchase of the assets of the ranch with the object of dividing them between themselves, the transfer of the livestock did no more than to effect a division pursuant to the agreement of the parties, and the form in which the transaction was cast was dictated to a large extent by the executor's insistence upon a stock sale as opposed to a sale of the assets. In the light of the record, we cannot say that the findings are erroneous.

The court ruled against the director by applying to its findings the proposition that tax liability is governed by the substance of a transaction rather than its form.

There is no question that the proposition is applicable where it is relied upon by the government. This court so held in *In Re Taxes, Kobayashi*, 44 Haw. 584, 358 P.2d 539 (1961). Here, the question is whether the proposition is equally applicable where it is the taxpayer who places reliance thereon.

In *Peerless Steel Equipment Company* v. *Commissioner*, 26 CCH Tax Ct. Mem. 880, 67,181 P-H Tax Ct. Mem. (1967), it is stated: "Though there may be some attractive reasons for requiring a taxpayer to adhere to the form that he has created, the even-handed application of the law requires us to allow taxpayers the opportunity to show that their true intent was different from what was said, and so the courts have done."

We agree. However, the taxpayer's showing must include a showing that consideration of tax advantage was not the motivating factor in the adoption of the form in controversy. Where a taxpayer resorts to a particular

form to gain some specific tax advantage for himself, he is held to abide by the form. *Higgins* v. *Smith,* 308 U.S. 473 (1940) ; *Moline Properties, Inc.* v. *Commissioner,* 319 U.S. 436 (1943).

In this case, Erdman and the Coberlys presumably could have purchased the URL stock jointly, then dissolved the corporation and divided its assets between themselves. Such procedure would have avoided the formality of a sale.

However, before the consummation of the purchase of the URL stock, Erdman had decided to operate the Ulupalakua section of the ranch in corporate form. That was the sole reason for the formation of URI. On this point, Erdman testified as follows:

"Q Now was there any reason for forming Ulupalakua Ranch, Inc.

"A The reason for forming Ulupalakua Ranch, Inc., was that after talking with accountants and attorneys, I had decided to operate in the corporate form and therefore we set up the corporation to hold the assets that would be purchased, in corporate name.

"Q Was there any other reason for forming an incorporation, corporate business, instead of being a sole proprietor?

"A My accountants and attorneys had decided that this was the best way to operate and this would be the only real reason to do it."

On the other hand, the Coberlys had decided to operate the Kipahulu section as a partnership. For this purpose, according to McCaughey's affidavit, they had formed a California partnership known as Kipahulu Cattle Co.

With URI in existence, it was a simple matter for Erdman to purchase the stock in the name of URI and to use that corporation as a conduit to place the assets of the Kipahulu section in the hands of the Coberlys before URI

began operating the Ulupalakua section. A corporation may act as such conduit without generating any tax consequence. *Central Life Assurance Society, Mutual* v. *Commissioner,* 51 F.2d 939 (8th Cir. 1931).

We think that there is sufficient showing to negative tax consideration as the motivating factor in this case.

To hold that a taxable event under the general excise law occurred merely because a procedure was adopted which involved an execution of a bill of sale is to over-emphasize form and to ignore the underlying realities of the situation.

Affirmed.

*Tany S. Hong,* Deputy Attorney General (*Bertram T. Kanbara,* Attorney General, and *Roy M. Kodani,* Deputy Attorney General, on the brief) for appellant.

*William W. Saunders* and *James H. Lawhn* (*Lewis, Saunders & Key* of counsel) for appellee.