## In the Matter of the Tax Appeal of HAWAIIAN TELEPHONE COMPANY, Taxpayer

NO. 5856

JANUARY 27, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA AND
MENOR, JJ., AND CIRCUIT JUDGE SHINTAKU
IN PLACE OF KIDWELL, J., DISQUALIFIED

OPINION OF THE COURT BY KOBAYASHI, J.

The taxpayer, Hawaiian Telephone Company (hereinafter appellant or taxpayer), appeals from the decision of the tax appeal court, which was based upon stipulated facts, affirming the assessment of additional public service tax under HRS Chapter 239 by the Director of Taxation for the State of Hawaii (hereinafter Director), after disallowing exclusions taken by appellant from gross income. We reverse.

### ISSUE

Can the appellant exclude from gross income, as defined for public service tax purposes in HRS Chapter 239, the amount it credited to the United States Government for the use of government-owned facilities and equipment?

### STATEMENT OF THE CASE

Appellant is a public utility engaged in providing common carrier communication services.

The following facts, *inter alia*, stipulated to by the parties, are helpful and determinative on the resolution of this appeal. They are quoted in the exact wording of the stipulation:

. . . .

2. This appeal involves assessments against Taxpayer under the Public Service Company Tax Law (Chapter 239. Hawaii Revised Statutes) for the Public Service Company Tax year 1973.

3. The public service company tax applies to public service company business income from the preceding year, *i.e.*, the 1973 public service company tax is paid on the basis of 1972 income, and thus the assessments in this appeal involve Taxpayer's operations for the period beginning January 1. 1972, and ending December 31, 1972 (hereinafter referred to as the "operations time period").

4. The total amount of assessments involved in this

appeal is $52,820.00 in public service company taxes plus $4,225.00 in interest thereon as shown on the Notice of Assessment dated May 10, 1974, attached hereto as Exhibit "A".[1]

5. The assessments in this appeal relate to Taxpayer's revenues for services furnished by the Taxpayer through the operation of its facilities and GFE (as hereinafter defined) in the Defense Administrative Telephone System on Oahu (hereinafter referred to as "DATS"), and Taxpayer's charges to the United States Government (hereinafter referred to as the "Government") for such services. DATS consists of telephone systems located on military bases on Oahu. Prior to December 31, 1971, DATS was operated by military agencies of the Government. Since January 1, 1972, DATS has been integrated into a common carrier services to be furnished by Taxpayer.

6. In connection with furnishing of services by the Taxpayer through the operation of its facilities and GFE in DATS, Taxpayer uses certain existing telephone facilities, plant, and equipment owned by the Government. These facilities, plant, and equipment owned by the Government are hereinafter referred to as "GFE". Under the GFE Agreement referred to below, the Government granted to Taxpayer the right to use existing GFE installed and in stock described in Schedule A to the GFE Agreement. Compensation for use of the installed GFE is based on compensation specified in such Schedule A and compensation for use of stock is the material cost shown in such Schedule A. Paragraph 1.02 provides that Schedule A will be updated monthly to reflect all changes in use of equipment and facilities. The Taxpayer is required by Paragraphs 1.03, 1.04 and 1.05 to identify all GFE, to keep records of GFE and to protect, preserve and maintain GFE.

---

[1] All exhibits mentioned in the stipulated facts, except as noted, will not be attached herein.

7. Under Section 1.06 of the GFE Agreement referred to below, Taxpayer and the Government agreed that, whenever the supply of any item of GFE was worn out in the operation of DATS, Taxpayer would replace such item with its own facilities, plant, and equipment. As a result of this agreement, there have been and will be numerous changes in the mix of GFE and the facilities, plant and equipment owned by Taxpayer in DATS. Since such changes occur when items of GFE wear out, Taxpayer is unable to predict the times when such changes will occur. Any such replacement of a retirement or disposition unit as defined in Section 1.06 of the GFE Agreement would be property of Taxpayer and, if the replacement is less than a retirement or disposition unit, it is deemed a maintenance/repair and remains Government property.

8. As a public utility, Taxpayer is required to charge for its services on the basis of tariff rates for DATS services on file with the Public Utilities Commission of the State of Hawaii (hereinafter referred to as the "Commission"). PUC Tariff No. 3, sec. 20, regulates the tariff rates for DATS services and is attached hereto as Exhibit "B".

9. Taxpayer alleges that it was unable to determine a method of fixing tariff rates for DATS services that would properly allow for the changing mix of GFE and Taxpayer's property used in the operation of DATS without constantly changing the tariff. Taxpayer believed that constantly changing the tariff rates for DATS services to reflect the changing mix of GFE and Taxpayer's property used in DATS was impractical. Accordingly, Taxpayer and the Government agreed that the DATS tariff rates would be fixed without regard to the use of GFE by Taxpayer and that Taxpayer would bill the Government on the basis of such tariff rates less an allowance to the Government of an appropriate amount for the use of GFE by Taxpayer in the operation of DATS. The Director disagrees with Taxpayer's foregoing reasons and belief

and alleges that both billed items are separate and distinct transactions: DATS tariff charges are for services rendered for DATS and the GFE credit allowance is for rent and compensation for stock.[2]

10. On or about December 6, 1971, Taxpayer and the Government executed a Communication Service Authorization Agreement for furnishing common carrier communications services through the operation of its facilities and of GFE in DATS on Oahu (referred to herein as the "DATS Agreement") and an Agreement for Special Terms and Conditions for Use of GFE in providing DATS services (referred to herein as the "GFE Agreement"), which agreements were effective as of January 1, 1972. Under the DATS Agreement Taxpayer agrees to provide services through the operation of its facilities and GFE in DATS and in connection therewith is granted under the GFE Agreement the right to use existing GFE for a period of ten (10) years. The agreements allow Taxpayer to change the amount of its monthly bills to the Government for DATS services and GFE use (i.e., the credit for GFE use changes in accordance with the requirements of the GFE Agreement) without changes to the Taxpayer's tariff. A copy of the DATS Agreement is attached hereto as Exhibit "C". A copy of the GFE Agreement is attached hereto as Exhibit "D".

11. The GFE Agreement provides in Paragraph 1.12(c) that the Taxpayer shall be liable for loss, damage or destruction of GFE in its possession or used by it caused by its negligence. The GFE Agreement provides in Paragraph 1.14 that Taxpayer shall indemnify and hold harmless the Government for damages caused by Taxpayer's possession or use of GFE. The GFE Agreement provides in Paragraph 1.06(c) that ownership of GFE remains in the Government, except where replacements are made by Taxpayer to certain units under Paragraph 1.06.

---

[2] The tax appeal court did *not* find this stipulated fact, as a fact, in the trial below.

12. During the operations time period, Taxpayer provided services to DATS in accordance with the terms and provisions of the DATS Agreement and the GFE Agreement.

13. During the operations time period, Taxpayer billed the Government for DATS services in an amount equal to the DATS tariff charges for such services less a credit for the use of GFE, pursuant to Paragraph (3) of the DATS Agreement and Paragraph 1.01(a) of the GFE Agreement. Taxpayer has collected the net amount shown on such bills during the operations time period but has not collected (and could not collect) from the Government the credited amounts during such period on account of the use of GFE. A copy of a bill is attached hereto as Exhibit "E".

14. Taxpayer credited its operating revenue accounts with the full amount of the tariff charges for DATS services without reduction of the allowance for use of Government-owned facilities in providing telephone services; Taxpayer charged to its "Rent for Lease of Operating Property" account substantially all of the amount of the allowance for use of Government-owned facilities. Taxpayer is required to account for DATS revenues in this manner under the Uniform System of Accounts prescribed by the Federal Communications Commission. Taxpayer requested that it be allowed to credit its operating revenue accounts only by the amount of DATS tariff charges less GFE allowances, which request was denied. The Director received a letter from the Federal Communications Commission indicating that this denial and accounting treatment under the Uniform System of Accounts were not intended to be determinative for Hawaii tax purposes. A copy of the letter from the Federal Communications Commission to the Director is attached hereto as Exhibit "F"[3] and a copy of Taxpayer's Operat-

---

[3] Letter from Federal Communications Commission reads as follows:

December 6, 1971

ing Statement for the period 1972 is attached hereto as Exhibit "G".

----

. . . .

The Commission has been consulted by the Hawaiian Telephone Company and the United States Navy concerning an arrangement under which the telephone company in the near future will commence providing telephone service to agencies of the U.S. Government in Hawaii on a more comprehensive basis than at present. The new arrangement calls for the telephone company to take over operation and maintenance of the fairly extensive telephone systems of the U.S. Government agencies which they now operate and maintain for themselves and which are connected with facilities of the telephone company for exchange service locally and for toll service to overseas points.

The expanded service to the Government agencies to be provided by the telephone company will be priced in tariffs to be filed with the Hawaii Public Utilities Commission *as though the telephone company were bearing the investment and depreciation burden of all the physical facilities used in the telephone service. This pricing is done as a matter of contract administration convenience* since, in fact, the Government agencies will for a number of years to come be participants in the service provided to them by reason of the fact that their present telephone facilities will continue to be used until they wear out or become unusable for other reasons. This Government-agency customer participation in the service will be recognized by the telephone company by collecting from the Government agencies less than the amounts arrived at by pricing out units of service at the rates shown in the tariff. As the Government facilities are phased out and the carrier-owned facilities are phased in, the net payments by the Government to the carrier will increase.

It is our understanding that the State of Hawaii imposes, in lieu of ad valorem taxes on real and personal property. a Public Service Company tax and a Public Utility fee on telephone companies. Both of these exactions are measured by applying percentages to gross receipts. If Hawaii were an ad-valorem-tax state there would be no measurement-of-tax problem arising out of the new service arrangement soon to become effective. It seems to us that the gross receipts tax should likewise pose no measurement-of-tax amount problems when the real nature of the new arrangement is fully appreciated. It is the purpose of this letter to contribute what we can to an understanding of what the gross receipts are under the new arrangement.

*Under the above-described circumstances to treat the charges calculated under the tariff as gross receipts would appear to ignore the essence of the arrangement as simply a practical and desirable business expedient. The essential objective of the arrangement is to avoid the cumbersome and costly task of monthly or periodic revisions of the tariff rate as Government-owned facilities are phased out and carrier owned facilities are substituted therefor.*

*Further complicating the matter of ascertaining a true gross receipts tax measurement base is the fact that the Federal Communications Commission has long*

15. The GFE Agreement provides in Paragraph 1.08[4] that the amount of the aforesaid credit on Taxpayer's bills to the Government for use of GFE in DATS is based on expenses normally included in developing tariff rates which Taxpayer estimated it would not incur because of the use of GFE.

16. In the additional assessment involved in this appeal, the State of Hawaii, Director of Taxation, has assessed public service company taxes against Taxpayer for the amount of the aforesaid credit on Taxpayer's bills for the use of GFE in Taxpayer's services through the operation of its facilities and GFE in DATS, including the amount of the aforesaid credit as gross income to Taxpayer.

---

*established accounting rules with which Hawaiian Telephone Company must comply.* These rules which, incidentally, have been developed over many years and are applicable to hundreds of companies and so cannot be drafted to provide for special treatment of a relatively few unique transactions, call for crediting the operating revenue accounts with the amounts of money which the company becomes lawfully entitled to receive and this has always been construced [sic] to mean the charges specified in a tariff where there is one. In these circumstances this Commission feels compelled to require that the tariff charges of the Hawaiian Telephone Company to the Government agencies be credited to revenues with no netting of reductions in those charges because of Government owned facilities used in the telephone service. This accounting requirement, however, is not intended to be determinative of the base for fixing the amount of gross receipts taxes any more than the amounts required to be recorded as costs of property are intended to be determinative of assessed valuations for ad valorem taxes. (Emphasis added.)

. . . .

[4] Section 1.08 of the GFE agreement provides in part:

For the use of Government-owned equipment and facilities (other than Government-owned station connections) as hereinbefore provided, Company shall account to Department [of Navy], by means of billing Department monthly for communication services at tariff rates less credit for GFE. This monthly credit amount is based on those expenses normally included in tariff rates which Company estimates would not be incurred because of Government ownership of equipment and facilities and includes compensation for depreciation (to include retirement from all causes including casualties), return of investment, income taxes, and administration applicable to such equipment and facilities used by Company.

17. Under Sections 1.01(a), 1.06(c), 1.03, 1.04, and 1.05 of the GFE Agreement, the Government granted to Taxpayer the right to use GFE only for the purpose of providing DATS services as common carrier services to the Government. During the operations time period, Taxpayer's use of GFE was restricted to use in providing DATS services as common carrier services to the Government. During the operations time period, Taxpayer's use of GFE was restricted to use in providing DATS services as common carrier services to the Government and during such period Taxpayer did not use GFE other than in connection with the provision of DATS services as common carrier services to the Government.

18. During the operations time period, changes in the amount of GFE in DATS resulted in approximately 574 changes in Schedule A and the amount of the aforesaid allowance for GFE. Of these changes, 463 were on account of decreases in the amount of GFE in DATS.

19. PUC Tariff No. 3, paragraph I, entitled "Computation of Charges" was amended on or about November 30, 1973, to provide that the charges would be based on the applicable rates less the allowance for use of GFE pursuant to the DATS and GFE Agreements.

. . . .

The appellant contends that the substance rather than the apparent form of the transaction between appellant and the Government is the proper basis for determining appellant's gross income and public service company tax; that the substance of this transaction is that appellant shall provide DATS services for charges determined by a compensation formula which is the DATS tariff charges less the value of the customer-provided facilities and equipment used in providing DATS services — that is, the value of GFE; that only the net amount which appellant is legally entitled to collect pursuant to such compensation formula should be included in determining appellants' gross income and public service company tax.

The Director, on the other hand, contends that the transaction herein, in form and substance, reflected the contemplation and intent of appellant and the Government, to-wit: that the billings submitted by the appellant to the Government show the charges for services rendered by appellant pursuant to stubs and the compensation credit for use of Government-owned equipment; that the compensation credit in the bill is for equipment rental and constitutes normal expense of the business; that though the Director admits that only the net amount of the billing was in fact collected by appellant from the Government, the net amount in the monthly bill should not determine the substance of the transaction between the parties; that the total gross amount of the billing, without deductions as claimed by appellant, for services rendered, constitutes gross income to the appellant.

The tax appeal court agreed with the contentions of the Director, and its findings of fact and conclusions of law stated, *inter alia,* as follows:

### FINDINGS OF FACT

. . . .

5. Except for item 9, the Stipulated Facts filed on August 2, 1974 are found to be the facts by the Court and are incorporated herein by reference. .

### CONCLUSIONS OF LAW

1. The gross amounts billed by Hawaiian Telephone Company to the United States Government for communications services at tariff rates are includible as gross income from the public utility business and are subject to the public service company tax.

2. In form, fact and substance the Hawaiian Telephone Company and United States Government entered into a service contract for communications services and a lease arrangement for the use of the Government's

communications equipment.

3. The term "gross income" implies income from any and all sources as opposed to net income or net receipts. *Hawaii Consolidated Railway v. Borthwick,* 34 Haw. 269 (1937) aff. 105 F.2d 286; *Hawaiian Beaches v. Kondo,* 52 Haw. 279 (1970). The credit for use of government equipment should not be deducted from gross income by Hawaiian Telephone Company for public service company tax purposes.

4. The term "gross income of the public service corporation" means without deduction of rent paid for use of facilities and equipment or expenses of a similar nature generally borne by a business. *Columbia Railway, Gas & Electric Co. v. Jones,* 112 S.E. 267, 119 S.C. 480 (1922).

. . . .

### STATUTES

The sections of HRS Chapter 239 relevant to this appeal are:

HRS §239-2 *Definitions* [of "gross income" for public service company tax law]. . . .

. . . . .

(6) "Gross income" means the gross income from public service company business as follows:

. . . .

(B) Gross income from the . . . conveyance or transmission of telephone or telegraph messages, or the furnishing of facilities for the transmission of intelligence by electricity, by land or water or air:

(i) Originating and terminating within this State, or

. . . .

(iii) By means of plant or equipment located in the State, between points in the State, . . . .

HRS §239-5 *Public utilities, generally.* (a) There shall be levied and assessed upon each public utility . . . a tax of such rate per cent of its gross income each year from its

public utility business as shall be determined in the manner hereinafter provided. The tax imposed by this section is in lieu of all taxes other than those below set out, and is a means of taxing the real property (owned by the public utility or leased to it by a lease under which the public utility is required to pay the taxes upon the property), and the personal property of the public utility, tangible and intangible, including going concern value. . . .

## OPINION

It is well established that tax liability is governed by the substance of a transaction rather than its form. *In re Taxes, Kobayashi*, 44 Haw. 584, 358 P.2d 539 (1961). There is no question that the above doctrine is applicable where it is relied upon by the government. However, before the doctrine can be asserted by a taxpayer he must include a showing that consideration of tax advantage was not the motivating factor in the adoption of the form in controversy. Where a taxpayer resorts to a particular form to gain some specific tax advantage for himself he is held to abide by the form. *In re Taxes, Ulupalakua Ranch*, 52 Haw. 557, 560-61, 481 P.2d 612 (1971). Our first concern, then, is whether appellant has met this initial burden. We believe, upon consideration of the record, that the appellant has met its initial burden. The motivating factor in the tariff schedule filed herein was for contract administration convenience and not for a tax advantage.

We further believe that the substance of the transaction between appellant and the Government is that the DATS agreement and the GFE agreement are two inseparable parts of a single transaction for the operation of DATS by the appellant. We are of the opinion the tax appeal court erred in its conclusion of law that the DATS and GFE agreements were separate agreements — the former for service for communication, and the latter, a lease arrangement.

Upon consideration of the record, we are of the opinion

that the tax appeal court clearly erred in not incorporating stipulated fact No. 9 as part of the facts herein relative to appellant. *In re Taxes, Hawaiian Land Co.*, 53 Haw. 45, 49, 487 P.2d 1070, 1074 (1971). *See* HRCP Rule 81(b)(8); *Pacheco v. Hilo Electric Light Co.*, 55 Haw. 375, 520 P.2d 62 (1974). Appellant stated as a fact that, based on the stringent requirements of HRS § 269-16, it was impractical to constantly change the tariff rates for DATS services to reflect the changing mix of GFE and appellant's properties. We agree with appellant that the stringent and time consuming requirements of § 269-16 make it impractical to establish a tariff rate in a manner which would reflect the correct returns and earnings of the appellant on its investment and services.

The evidence sustains, among others, the appellant's contention that Government's ownership of GFE was not taken into consideration in establishing the tariff rates.

Since the P.U.C. tariff rates are based on the assumption that appellant owns GFE, they do not properly reflect the gross income of the appellant from "the conveyance or transmission of telephone or telegraph messages, or the furnishing of facilities for the transmission of intelligence by electricity, by land or water or air". The portion of the tariff rates which reflects the investment in GFE, by the Government and not by appellant, is not properly attributable to the appellant because the investment was never made by it.

Our public utility statute, HRS § 269-16(a) (Supp. 1975), provides, *inter alia,* that the public utilities commission shall order, regulate, fix, and change the rates to be charged by the utility so that the rates shall "be just and reasonable, and such as shall provide a fair return on the *property of the utility actually used or useful for public utility purposes. . . .*" (Emphasis added.)

There is no dispute in this case that the GFE is not the property of the appellant. Based on the record, there is no doubt that the DATS tariff was fixed without consideration of the fact that appellant did not own GFE — actually the tariff was fixed on the assumption that appellant owned GFE. The letter from F.C.C. to the Director states the reasons why the

tariff rate was as determined in PUC Tariff No. 3. Thus, the tariff rate as originally determined does not properly reflect a return to the appellant "on the property of the utility actually used or useful for public utility purposes".

In *In re Application of Hawaiian Electric Co., Ltd.*, 42 Haw. 233, 241 (1957), this court stated: "A public utility is entitled to a fair annual return on its investment. In arriving at such fair return all items of expense incident to the earning of the return must be taken into consideration. . . ." Clearly, the GFE are not the investment of the appellant.

We are of the opinion that the amount credited by appellant to the Government cannot be considered gross income of the appellant, and thus, hold that the tax appeal court erred in its conclusion of law. It is well established that income is taxed to the party who earns it. *In re Aloha Airlines, Inc.*, 56 Haw. 626, 627, 547 P.2d 586, 587 (1976). The Director contends that *Aloha, supra*, is dispositive on the herein issue that the credited amount constitutes gross income of the appellant. We disagree. The record herein does not support the conclusion that appellant earned the amount credited to the Government. The appellant did not earn that portion of the tariff rate encompassing the GFE. The fact that the tariff rate did not reflect a proper return on properties of the appellant for the reason that the tariff included GFE which were not an investment of the appellant; and the further fact that appellant had no lawful right to enforce payment from the Government of the amount credited, as earned income, emphasize more clearly our above conclusion that the credited amount cannot be considered as gross income to the appellant.

We further believe that the tax appeal court erred in its conclusion of law that the credited amount constitutes "rent paid for use of facilities and equipment or expenses of a similar nature generally borne by a business."

The instant case is unique in its substantive aspect, and we are of the opinion that the GFE agreement cannot be held, as a matter of law, to be a separate lease arrangement with the

credited amounts considered as ordinary business expenses. The record does not support such a conclusion.

For certain, there are some provisos in the GFE agreement herein which are generally prevalent in a lease agreement, to-wit: that the appellant shall be liable for loss, damage or destruction of GFE in its possession or used by it caused by its negligence; that appellant shall indemnify and hold harmless the Government for damages caused by appellant's possession or use of GFE; that the appellant shall protect, preserve, and maintain GFE.

For the above stated provisos and the fact that appellant, in its accounting procedure, credited its operating revenue accounts with the full amount of the tariff charges for DAT's services without reduction of the allowance for use of GFE in providing telephone services, and charged to its "rent for lease of operating property" account substantially all of the amount of the allowance for use of GFE, this court can well appreciate the tax appeal court's decision.

However, upon consideration of what we consider in the record as reflecting the substance of the herein transaction, we arrive at the conclusions stated in this opinion.

There is no doubt that the GFE were not the properties of appellant; that appellant did not agree to nor was it required to pay rent for the use of GFE, though required to use the GFE; that the credited amounts, in actuality, were not business expenses of the appellant; that the tariff rate did not take into consideration the fact that the GFE were the properties of the Government and not the properties of appellant; that the tariff rates were scheduled as they were originally for administrative convenience; and that the F.C.C. rules compelled appellant to follow the accounting procedures used herein, and the accounting does not truly reflect the substance of the herein transaction.

We, therefore, conclude that the gross income herein of appellant is the net return from the Government pursuant to the compensation formula established between appellant and the Government. The appellant's public service company tax herein should be determined upon said gross income.

We believe that resolve of the above issues as stated herein is dispositive of this appeal.

*Hugh Shearer (H. Mitchell D'Olier* with him on the briefs; *Goodsill Anderson & Quinn* of counsel) for taxpayer-appellant.

*Alana W. Lau,* Deputy Attorney General, for the Director of Taxation, appellee.